FILED

2022 OCT 12 PM 2: 51

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

KEITH INGERSOLL

CASE NO. 6:21-cr-138-ACC-EJK
18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1028A

## SUPERSEDING INFORMATION

The United States Attorney charges:

### COUNT ONE
(Conspiracy to Commit Wire Fraud)

**A. Introduction**

At times material to this Information:

1. KI Consulting Group LLC (KI Consulting Group) and the Ingersoll Group, LLC (Ingersoll Group) were limited liability companies that were registered by KEITH INGERSOLL with the Florida Department of State in 2017 and 2018, respectively. KEITH INGERSOLL controlled both of those companies and their bank accounts.

2. Daystar Investments, Inc. (Daystar Investments), IDrive Media Group Inc. (IDrive Media), and Shooters of Orlando Inc., also referred to as Shooters Orlando Inc., (Shooters Orlando) were corporations that were registered by JAMES P. ADAMCZYK with the Florida Department of State in 2018, 2020, and 2016, respectively. JAMES P. ADAMCZYK controlled each of those corporations and their bank accounts.

1

3. The Victim was a resident of the Middle District of Florida. The Victim controlled several companies, including Company A, Company B, Company C, and Company D, and their bank accounts.

4. Bank of America, BMO Harris Bank, Fifth Third Bank, Regions Bank, Seacoast National Bank (Seacoast Bank), and Wells Fargo Bank were financial institutions as defined by 18 U.S.C. § 20, the accounts and deposits of which were federally insured by the Federal Deposit Insurance Corporation.

### B. Conspiracy

5. Beginning at a time unknown to the United States Attorney, but beginning at least by in or about April 2016, and continuing thereafter through and including on or about the date of this Information, in the Middle District of Florida, and elsewhere, the defendant,

**KEITH INGERSOLL,**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the United States Attorney to commit wire fraud, by knowingly and with intent to defraud devising and intending to devise a scheme and artifice to defraud, and for obtaining money and property, by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing the aforesaid scheme and artifice to defraud, knowingly transmitting and causing to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

### C. Manner and Means

6.   The manner and means of the conspiracy included the following:

a.   It was part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did unlawfully devise and execute a scheme and artifice to defraud the Victim of money and property by means of materially false and fraudulent pretenses, representations and promises.

b.   It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did falsely and fraudulently represent to the Victim that KEITH INGERSOLL or entities controlled by or affiliated with him had entered into contracts to purchase real estate within and outside of Florida, including in Daytona Beach in Volusia County, Ocala in Marion County, Fort Lauderdale in Broward County, Alabama, Illinois, Nebraska, and the Bahamas.

c.   It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did falsely and fraudulently represent to the Victim that funds were needed from the Victim to be used as refundable deposits for real estate that had been contracted for purchase.

d.   It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did falsely and fraudulently represent that the funds provided by the Victim to be used as refundable deposits would be held in escrow by an attorney or by an attorney as an escrow agent.

3

e. It was a further part of the conspiracy that another co-conspirator known to the United States Attorney (referred to herein as the "Suspended Attorney") would and did falsely and fraudulently represent that he was an attorney who would hold the refundable deposits in escrow, when in truth and in fact, the Suspended Attorney was not a licensed attorney, he had been suspended from the practice of law in 2008 and had never been reinstated, and he did not retain the Victim's funds in escrow but used a portion for his own personal benefit and transferred other funds to KEITH INGERSOLL and JAMES P. ADAMCZYK.

f. It was a further part of the conspiracy that, after the Suspended Attorney died, JAMES P. ADAMCZYK would and did falsely and fraudulently represent that he was an attorney who would hold the refundable deposits in escrow or as an escrow agent, when in truth and in fact, JAMES P. ADAMCZYK was not a licensed attorney and he did not hold the Victim's funds in escrow or as an escrow agent but diverted portions for his own personal benefit and transferred other funds to KEITH INGERSOLL.

g. It was a further part of the conspiracy that KEITH INGERSOLL would and did falsely and fraudulently represent that he would locate a buyer for each property under contract and then either assign the purchase contract to the buyer for a specified price or simultaneously purchase and sell (flip) the property.

h. It was a further part of the conspiracy that KEITH INGERSOLL would and did falsely and fraudulently represent that the Victim would receive 9% interest for the refundable deposits that were held in escrow or that were held by an

escrow agent, as well as a share of the profits from the sale of any of the real estate that was sold.

  i. It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did falsely and fraudulently represent that amounts held as refundable deposits would be refunded to the Victim at the Victim's request.

  j. It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did falsely and fraudulently claim that KEITH INGERSOLL or entities controlled by or affiliated with him had entered into purchase contracts with the owners of real estate, when in truth and in fact, as the defendants then and there well knew, the owners had not agreed to sell the real estate and, in some instances, had never been contacted about selling the real estate.

  k. It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did fabricate the names of the entities who the defendants and their conspirators falsely claimed were the owners of the properties that had been contracted for sale.

  l. It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did provide the Victim with real estate purchase contracts and other documents that were not executed by the owners of the properties but that contained forged signatures or were executed

using the names of fictitious individuals and that falsely represented the entities that owned the properties.

    m.    It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did falsely and fraudulently represent that the owners of the real estate claimed to be under contract had agreed to extensions of the closing dates for the contracts.

    n.    It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did falsely and fraudulently represent that there were buyers interested in purchasing the real estate that the conspirators claimed was under contract.

    o.    It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did identify such potential buyers by name and claim that they had expressed interest in purchasing the real estate, when in truth and in fact, as the defendants then and there well knew, the potential buyers did not exist, had never been contacted about purchasing the real estate, or had declined to pursue a transaction.

    p.    It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did fabricate some of the names of potential buyers who the conspirators falsely claimed were interested in purchasing the real estate that the conspirators claimed to have under contract.

    q.    It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators, as opposed to holding the

Victim's refundable deposits in escrow as had been promised to the Victim, would and did spend the proceeds received as a result of their fraud on themselves and for their own personal benefit, including for luxury car rentals, travel, and adult entertainment.

    r.    It was a further part of the conspiracy that KEITH INGERSOLL and JAMES P. ADAMCZYK would and did provide the Victim with documents that falsely claimed that the Victim's refundable deposits were being held in escrow or by an escrow agent, when in truth and in fact, as the defendants then and there well knew, the Victim's refundable deposits were not being held in escrow or by an escrow agent but had been transferred to accounts controlled by KEITH INGERSOLL and JAMES P. ADAMCZYK and used to benefit themselves.

    s.    It was a further part of the conspiracy that, after the Victim requested a return of some of his refundable deposits, KEITH INGERSOLL and JAMES P. ADAMCZYK would and did provide false excuses why the funds could not be returned, including false claims that JAMES P. ADAMCZYK was not allowed to leave Costa Rica due to having COVID-19 and that JAMES P. ADAMCZYK needed to be at the bank in person to return the funds to the Victim.

    t.    It was a further part of the conspiracy that KEITH INGERSOLL would and did falsely and fraudulently represent that a company was willing to replace the Victim as the one to make the refundable deposits and that he had been in contact with "Ray Beckwith" and "Ray Beckworth" of that company who was interested in pursuing such a transaction, when in truth and in fact, as KEITH INGERSOLL then and there well knew, the company did not have any representative by the name of

7

"Ray Beckwith" and "Ray Beckworth" and KEITH INGERSOLL had fabricated those names and created an email account using the fictitious name of "Ray Beckworth" to perpetrate the scheme by sending an email using that fictitious identity.

u. It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did obtain over $12 million as a result of executing this conspiracy and scheme and artifice to defraud.

v. It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did use interstate wires in furtherance of the conspiracy and scheme and artifice to defraud, including by causing interstate wires to be used to send and receive emails to and from each other and the Victim, and by causing interstate wires to be used to send and receive proceeds.

w. It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme to defraud and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349.

## COUNT TWO
### (Wire Fraud)

### A. Introduction

1. The allegations contained in paragraphs one through four of Count One of this Information are hereby realleged and incorporated herein by reference.

### B. Scheme and Artifice

2.  Beginning at a time unknown to the United States Attorney, but beginning at least by in or about April 2016, and continuing thereafter through and including on or about November 10, 2021, in the Middle District of Florida, and elsewhere, the defendant,

**KEITH INGERSOLL,**

did knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises

### C. Manner and Means of the Scheme

3.  The manner and means utilized to accomplish the scheme and artifice to defraud are set forth in paragraph six of Count One of this Information, which is incorporated by reference herein.

### D. Interstate Wire

4.  On or about the date set forth below, in the Middle District of Florida, and elsewhere, the defendant,

**KEITH INGERSOLL,**

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and

9

cause to be transmitted by means of wire, radio, and television communication in interstate commerce, the following writings, signs, signals, pictures, and sounds:

| TWO | July 2, 2021 | An email from KEITH INGERSOLL to "Ray Beckworth," entitled, "RE: Conversation for refi at 11:30," with a copy to the Victim and another email account of KEITH INGERSOLL |

All in violation of 18 U.S.C. § 1343.

## COUNT THREE
### (Aggravated Identity Theft)

#### A. Introduction

1. The United States Attorney hereby realleges paragraphs one through four of Count One of this Information and incorporates such paragraphs by this reference as though fully set forth herein.

2. On or about August 1, 2017, in the Middle District of Florida, and elsewhere, the defendant,

**KEITH INGERSOLL,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, specifically, the name and signature of W.V., during and in relation to a felony violation of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, as charged in Count One of the Information, knowing that such means of identification belonged to an actual person.

In violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

10

## COUNT FOUR
### (Conspiracy to Commit Wire Fraud)

### A. Introduction

At times material to this Information:

1. An elected official (hereinafter the "Public Official") held a position at a local governmental agency in Florida (hereinafter the "Government Agency").

2. KEITH INGERSOLL and the Straw Purchaser were residents of the Middle District of Florida.

3. The Company was registered by the Straw Purchaser with the Florida Department of State in August 2016. The Straw Purchaser controlled the Company.

### B. Conspiracy

4. Beginning on a date unknown to the United States Attorney, but beginning at least by in or about January 2017, and continuing thereafter through and including about November 2017, in the Middle District of Florida, and elsewhere, the defendant,

### KEITH INGERSOLL,

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the United States Attorney to commit wire fraud, in violation of 18 U.S.C. § 1343.

### C. Manner and Means

5. The manner and means of the conspiracy included the following:

11

a. It was part of the conspiracy that the Public Official retained KEITH INGERSOLL and his company, the Ingersoll Consulting Group, LLC, as a real estate consultant for the Government Agency.

b. It was part of the conspiracy that KEITH INGERSOLL, the Public Official, and other conspirators located a property for sale in the Middle District of Florida (the "Property").

c. It was a further part of the conspiracy that KEITH INGERSOLL, the Public Official, and other conspirators visited the Property and knew that the Property contained fixtures, including a vault, that were included in the listed purchase price for the Property.

d. It was a further part of the conspiracy that KEITH INGERSOLL recruited the Straw Purchaser to falsely and fraudulently act as a straw buyer of the Property.

e. It was a further part of the conspiracy that KEITH INGERSOLL provided funds to the Straw Purchaser to pay the down payment on the Property in order to conceal KEITH INGERSOLL's participation in the conspiracy.

f. It was a further part of the conspiracy that on or about March 29, 2017, the Straw Purchaser, through the Company, sent a letter of intent to the seller of the Property to purchase the Property for approximately $680,000.

g. It was a further part of the conspiracy that on or about April 11, 2017, the Straw Purchaser, through the Company, executed a purchase contract with the seller

12

of the Property to purchase the Property for $680,000. The purchase contract provided that the purchase price would include the real property and all of its fixtures.

  h. It was a further part of the conspiracy that on or about April 14, 2017, the Straw Purchaser, through the Company, and the Public Official on behalf of the Government Agency, executed a commercial contract whereby the Government Agency agreed to purchase the Property from Shooters Orlando, Inc. for $942,000, a price that was falsely and fraudulently inflated to financially benefit the Public Official, KEITH INGERSOLL, the Straw Purchaser, and other conspirators.

  i. It was a further part of the conspiracy that KEITH INGERSOLL recruited an additional associate to hold funds associated with the sale of the Property to the Government Agency to conceal KEITH INGERSOLL'S participation in the transaction.

  j. It was a further part of the conspiracy that on or about May 10, 2017, the Public Official, acting on behalf of the Government Agency, caused a wire in the amount of $938,217.88, the approximate purchase price of the Property, to be sent to KEITH INGERSOLL's associate, who that same date caused a wire in the amount of $937,947.41 to be sent to the title insurer for the Property transaction.

  k. It was a further part of the conspiracy that the purchase contract between the Company and the Government Agency falsely represented that the purchase price for the Property included two separate components—the real property and the fixtures, including the vault—to fraudulently justify the increased purchase price of the Property.

13

l.  It was a further part of the conspiracy that KEITH INGERSOLL and other co-conspirators caused the preparation of two false and fraudulent HUD-1 forms to conceal the true source of the funds paid to the seller of the Property and the amount of profit received from the sale of the Property to the Government Agency at the false and fraudulently inflated price.

m.  It was a further part of the conspiracy that KEITH INGERSOLL, the Straw Purchaser, the Public Official, and other conspirators received monetary kickbacks for their roles in the conspiracy from the profits earned through the sale of the Property.

n.  It was a further part of the conspiracy that KEITH INGERSOLL paid monetary kickbacks to the Public Official from the profits earned through the sale of the Property.

o.  It was a further part of the conspiracy that KEITH INGERSOLL, the Straw Purchaser, and other co-conspirators would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme to defraud and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349.

## COUNT FIVE
### (Attempted Wire Fraud)

### A. Introduction

At times relevant to this Information:

1.  The Small Business Administration (SBA) was an agency of the United States.

14

2. In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act. In conjunction with an officially declared disaster by the United States Government, the CARES Act allowed for the SBA to offer Economic Injury Disaster Loan (EIDL) funding to business owners negatively affected by the COVID-19 pandemic. To qualify, a business had to be in operation prior to February 1, 2020.

3. Using the SBA online portal, EIDL applicants submitted personal and business information in support of each EIDL application, and they did not have to submit supporting documentation of any sort. The application included a jurat-like paragraph where the applicant affirms that the information submitted is true and correct under the penalty of perjury and applicable criminal statutes.

4. The application process involved filling out assorted data fields relating to the size of the affected business entity, the ownership of said business, and other information such as the number of employees and gross business revenues realized in the 12 months prior to the date of the disaster (January 31, 2020). This information furnished by the applicant was then used by SBA application evaluation systems to calculate the principal amount of money the small business was eligible to receive in the form of an EIDL.

5. Pursuant to the provisions governing the EIDL program, loan proceeds had to be used by a business on certain permissible expenses. The EIDL (working capital) loans had to be used by the afflicted business to pay fixed debts, payroll,

15

accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

6. Ingersoll Group, LLC (Ingersoll Group) was a limited liability company that was registered by KEITH INGERSOLL with the Florida Department of State in 2018 and for which the principal place of business was within the Middle District of Florida.

### B. The Scheme and Artifice

7. Beginning on an unknown date but at least by on or about May 5, 2020, and continuing through on or about May 29, 2020, in the Middle District of Florida, and elsewhere, the defendant,

**KEITH INGERSOLL,**

did knowingly and with intent to defraud attempt to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, the substance of which scheme and artifice is described below.

### C. Manner and Means of the Scheme and Artifice

8. The manner and means by which the defendant sought to accomplish the scheme and artifice to defraud included, among others, the following:

    a. It was part of the scheme and artifice to defraud that the defendant would and did submit and cause the submission of a false and fraudulent EIDL loan application to the SBA on behalf of the Ingersoll Group seeking an EIDL loan from the SBA.

16

  b. It was a further part of the scheme and artifice to defraud that the defendant would and did falsely and fraudulently represent that the Ingersoll Group had Gross Revenue of $1,350,000 for the year 2019.

  c. It was a further part of the scheme and artifice to defraud that the defendant would and did falsely and fraudulently represent that the Ingersoll Group had a Cost of Goods Sold of $1,122,500 for the year 2019.

  d. It was a further part of the scheme and artifice to defraud that the defendant would and did misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of acts performed in furtherance of the scheme to defraud.

  D. **Execution of the Scheme and Artifice**

  9. On or about the date set forth below, in the Middle District of Florida and elsewhere, the defendant,

**KEITH INGERSOLL,**

for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds:

17

| Count | Date | Interstate Wire |
|---|---|---|
| FIVE | March 31, 2020 | Submission of EIDL loan application from the Middle District of Florida to the SBA, processed using a server located outside of Florida |

All in violation of 18 U.S.C. § 1349.

## FORFEITURE

1. The allegations contained in Counts One through Three and Five are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. §§ 1343 and/or 1349, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

*Amanda Daniels* for RBH
ROGER B. HANDBERG
United States Attorney

*Amanda Daniels*
Amanda Daniels
Assistant United States Attorney

*[signature]*
Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando